UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

QUINTIN A. NOWLIN,

                              Plaintiff,


                                                    **Hon. Hugh B. Scott**

              v.

                                                    11CV712S

                                                    **Report**
2 JANE DOE FEMALE ROCHESTER NEW YORK              **&**
POLICE OFFICERS, et al.,                          **Recommendation**
                                                    **&**
                              Defendants.          **Order**


Before the Court are the following motions by plaintiff or the Rochester defendants[1]:

(a) plaintiff's motion (Docket No. 63[2]), pursuant to Federal Rule of Civil Procedure 59(e), to

reconsider the decision (Docket No. 53, Order of June 19, 2013; see also Docket No. 61, Order

of July 9, 2013 (granting plaintiff recovery of his motion expenses)) on his earlier motion to

compel production of initial disclosure from the Rochester defendants (Docket No. 47);

---

[1]These defendants currently include the City of Rochester, its Police Department,
"Arresting Police Officer ID ROC2122," and Kenneth Coniglio, Jr., Docket No. 14, Rochester
Defs. Answer.  In plaintiff's proposed Amended Complaint, he identified these defendants as
Kelley Lusk, Anthony Mazurkiewicz, and Officer Dempsey ID ROC2122, Docket No. 66, Pl.
Notice at 1.
       This is contrast to the remaining defendants, also known as the "Monroe County
defendants," Sheriff Patrick O'Flynn, Sheriff's Deputy Richard Pozzuolo, and Monroe County.

[2]In support of this motion, plaintiff submits his Notice and Motion, with his Declaration,
Docket No. 63; his replying Declaration, Docket No. 82.
       In response, the Rochester defendants filed their cross-motion for judgment on the
pleadings (noted below at note 5), Docket No. 68.  The Monroe County defendants submit their
attorney's Declaration and Memorandum of Law, Docket No. 83.

(b) plaintiff's motion to amend again[3] the Complaint, to formally name the Jane Doe defendants

and to make other changes (Docket No. 66[4]); and (c) the Rochester defendants' cross-motion for

judgment on the pleadings filed in conjunction with their response to plaintiff's reconsideration

motion (Docket No. 68)[5]. For judicial efficiency all of these motions will be addressed in this

Report & Recommendation, although the motions to reconsider and for leave to amend pleadings

could be decided in an Order.

　　　Schedules were entered for the first two motions (Docket Nos. 65, 67). The Court later

decided to consider all three motions together and the briefing schedules previously entered were

amended (Docket No. 69). Responses to all motions ultimately were due by September 9, 2013,

with any replies due by September 23, 2013, and these three motions were deemed submitted

(without oral argument) on September 23, 2013 (id.). Plaintiff also moved to extend the

discovery deadlines in this action (Docket No. 70), which this Court initially granted in part to

---

[3]Cf. Docket Nos. 1 (original Complaint); 8 ([first] Amended Complaint); 12 ([second] Amended Complaint).

[4]In support of this motion, plaintiff submits his Notice and Motion, with his Declaration, and proposed Amended Complaint, Docket No. 66. In response, the Monroe County defendants submit their attorney's Declaration and their Memorandum of Law, Docket No. 83. The Rochester defendant's cross-motion, Docket No. 68, does not address plaintiff's motion for leave to amend.

[5]In support of their motion, the Rochester defendants submit their attorney's Declaration; Memorandum of Law (with exhibits); Certificates of Service, Docket No. 68. In opposition, plaintiff submit his opposition to filing of this cross-motion because it violates this Court's Local Civil Rule 7, Docket No. 74; his response to the cross-motion, Docket No. 82. Regarding plaintiff's objection, this Court later noted that the amended Certificate of Service to the cross-motion crossed in the mail with plaintiff's objection and this Court (absent plaintiff's further complaint) assumes that plaintiff received the cross-motion, see Docket No. 76, Order of Aug. 20, 2013, at 3. Plaintiff in his response states that he eventually received the cross-motion on August 19, 2013, ten days after he raised his objection to not receiving it, Docket No. 82, Pl. Decl. ¶ 27.

hold these deadlines in abeyance while the other motions were pending (Docket No. 72), but later

granted (Docket No. 76).

This case was referred to the undersigned to render a Report & Recommendation on

dispositive motions (Docket No. 26). During the pendency of these motions, this Report &

Recommendation (Docket No. 38) was set aside by Chief Judge Skretny and he granted in part

and denied in part the moving Monroe County defendants' motion for judgment on the pleadings

(Docket No. 73, Order of Aug. 16, 2013). That Order granted dismissal of plaintiff's New York

State Constitution claims against movants Monroe County and Sheriff O'Flynn (id. at 7, 1 n.1

(noting that codefendant Pozzuolo formally did not move)) but denied dismissal of plaintiff's

federal civil rights claims based on municipal or supervisory liability (id. at 3-6, 1 n.1). This

Court also has rendered a series of Orders regarding discovery in this action (Docket Nos. 53, 30

(staying discovery upon Monroe County defendants' motion), 36 (staying discovery), 51, 61, 64,

76); familiarity with which is presumed.[6]

## BACKGROUND

*Complaints*

This is a pro se civil rights action commenced by an incarcerated plaintiff. Plaintiff

alleges that defendants (the City of Rochester, its police officers, Monroe County, the Monroe

County Sheriff, and Sheriff's deputies) allegedly violated plaintiff's constitutional rights in

illegally stopping, searching, and arresting plaintiff on August 5, 2010, in a prostitution sting

operation (Docket No. 1, Compl.). Plaintiff filed his Complaint on August 25, 2011 (Docket No.

---

[6]Also pending is plaintiff's recently filed motion to compel the Rochester defendants to
produce discovery, Docket No. 87; see Docket No. 88 (Order of briefing schedule).

1, Compl.), and then filed a series of Amended Complaints (Docket No. 8, Am. Compl., filed Jan. 4, 2012; Docket No. 12, 2d Am. Compl., filed May 31, 2012; see Docket No. 13 (Order authorizing service of Second Amended Complaint)).  According to the latest amended pleading (Docket No. 12, 2d Am. Compl.), plaintiff claims that he was solicited by two unnamed Rochester Police Department officers, posing as prostitutes in an undercover sting operation (id. ¶¶ 13-21).  Plaintiff was pulled over by another defendant Rochester Police officer, searched and arrested for solicitation of a prostitute (id. ¶¶ 22-25).  According to the police incident report (Docket No. 68, Rochester Defs. Memo. Ex. A), defendant was arrested for violation of New York Penal Law § 230.04 for patronizing a prostitute.

He was then transferred to the Monroe County Sheriff's Department for booking. Plaintiff alleges that, during booking, drugs were planted on him and he then was charged with possession of a controlled substance (see Docket No. 12, 2d Am. Compl. ¶¶ 26-27).

Plaintiff alleges in Count One of the Second Amended Complaint that he was illegally stopped and searched, since defendant officers lacked probable cause (id. ¶¶ 28-31).  Count Two alleges that plaintiff was defamed by the posting of names and photographs of alleged "Johns" on billboards in the City of Rochester, arguing that this practice constitutes cruel and unusual punishment under the Eighth Amendment (id. ¶¶ 32-36).  Plaintiff next alleges in Count Three that the City of Rochester had policy to abuse process in conducting its prostitution stings (id. ¶¶ 37-39).  Count Four contends that Monroe County had a policy of negligently handling seized materials during booking, attributing ownership of contraband to the wrong party (id. ¶¶ 40-41). Finally, under Count Five, plaintiff alleges that the Monroe County Sheriff O'Flynn failed to protect plaintiff in the booking process from the false attribution (id. ¶¶ 42-43).  Plaintiff alleges

violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as under the New York State Constitution. Plaintiff seeks return of property, $500,000 compensatory and punitive damages, and recovery of impound fees, costs, and attorney's fees he incurred (id., 2d Am. Compl. at 11).

*Subsequent Proceedings*

Plaintiff moved for leave to proceed as a poor person (Docket No. 2), which was granted, with this Court dismissing claims against certain other parties (Docket No. 9). The Rochester defendants (Docket No. 14) and the Monroe County defendants (Docket No. 21) separately answered the Second Amended Complaint (Docket No. 12). This Court then issued a Scheduling Order which had initial Rule 26(a) disclosure due by October 23, 2012, discovery due to be completed by February 22, 2013, and dispositive motions by May 24, 2013 (Docket No. 22). The counsel for the Rochester defendants sought a four-month extension of the Scheduling Order deadlines (Docket No. 23) but this request was denied (Docket No. 24).

The initial Scheduling Order also had initial dispositive motions due by October 9, 2012 (id.). The Monroe County defendants then filed their timely motion for judgment on the pleadings (Docket No. 25) and obtained a stay of discovery (Docket Nos. 29, 30), while the Rochester defendants did not make an initial dispositive motion (see Docket No. 38, Report & Rec. at 3; see also Docket No. 36, Order of Nov. 29, 2012). This Court issued a Report & Recommendation that the Monroe County defendants' motion be granted (Docket No. 38), which Chief Judge Skretny later set aside, granting in part and denying in part the Monroe County defendants' motion (Docket No. 73). Chief Judge Skretny granted the dismissal of plaintiff's New York State Constitution claims against movants Monroe County and Sheriff O'Flynn (id. at

7, 1 n.1 (noting that codefendant Pozzuolo formally did not move)), but denied movants' motion to dismiss plaintiff's federal civil rights claims based on municipal or supervisory liability (id. at 3-6, 1 n.1). The Report on the Monroe County defendants' motion also amended the Scheduling Order (cf. Docket No. 22), with initial Rule 26(a) disclosure due by May 14, 2013, full discovery completed by June 28, 2013 (Docket No. 38, Report & Rec. at 8). Anticipating his motion to compel, plaintiff next moved to extend the discovery deadlines in the amended schedule (Docket No. 45); that request was granted (Docket No. 46).

Objections to the Report & Recommendation on the Monroe County defendants' motion (Docket No. 39) were pending when plaintiff's motion to compel was filed (see Docket Nos. 40 (briefing scheduling Order), 41, 42 (responding and reply papers)), but Chief Judge Skretny rendered his Order (Docket No. 73) discussed above on that Report.

Plaintiff next moved to compel discovery from the Monroe County defendants (Docket No. 50) which was denied (Docket No. 51) due to the stay of discovery discussed above (Docket No. 30; see also Docket No. 29). Plaintiff later moved for relief from the stay of discovery from the Monroe County defendants (Docket No. 55), which also was denied (Docket No. 64).

*Plaintiff's Initial Motion to Compel from the Rochester Defendants (Docket No. 47)*

Insisting upon the deadlines set forth in the initial Scheduling Order, plaintiff moved to compel initial disclosure from the Rochester defendants, arguing that the Rochester defendants failed to produce initial disclosure by the October 23, 2012, deadline as well as production of all papers and transcripts in his criminal prosecution, NYS CR: 10-260529 (Docket No. 47, Pl. Decl. ¶¶ 5-7, 10). Plaintiff therefore moved to compel this disclosure and imposition of sanctions under Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vii) (id., at page 3, WHEREFORE Cl.).

Plaintiff's motion was granted in part, compelling the Rochester defendants to produce initial disclosure but declining to dismiss defenses (Docket No. 53). The Rochester defendants were to identify Jane Does and produce initial disclosure by an extended date (id. at 8). Plaintiff was directed to file an application to recover his reasonable motion costs (essentially his duplicating costs and postage, and not attorney's fees since he was proceeding pro se) (id.). Plaintiff submitted an application letter, seeking $5.28 in pre-paid postage (Docket No. 56), which this Court granted (Docket No. 61). Plaintiff did not seek any other relief due to filing this motion to compel.

***First Pending Motion:  Plaintiff's Motion for Reconsideration Motion to Compel (Docket No. 63)***

Plaintiff seeks reconsideration, under Rule 59(e), of this Court's denial of so much of the relief he sought in his motion to compel against the Rochester defendants for their failure to produce discovery. He now seeks entry of a default judgment against them and evidence preclusion against them. (Docket No. 63.) Plaintiff complains that the initial disclosure that was produced was not signed by defense counsel, that defendants did not produce supporting depositions to the criminal complaint in the underlying prosecution or the Grand Jury testimony of plaintiff and witnesses (id., Pl. Decl. ¶ 9). He argues that defense counsel violated two Orders and he believes counsel committed a crime. He contends that he experienced pain and suffering, mental anguish and anxiety (id. ¶ 10, 11), and seeks $1,000 in damages for this and removal of defense counsel (id. ¶ 12).

The Rochester defendants urge this Court not to reconsider its discovery Order (Docket No. 68), concluding that plaintiff has not asserted grounds for reconsideration (id., Rochester

Defs. Memo. at 12-13).  They contend that the stay of discovery (Docket No. 30; see Docket

No. 36) included the Rochester defendants (see Docket No. 36) and thus they did not respond to

plaintiff's discovery demands (Docket No. 68, Rochester Defs. Atty. Decl. ¶¶ 16-17).  Once

ordered to produce by this Court (Docket Nos. 53, 54), the Rochester defendants contend that

they produced discovery to plaintiff (Docket No. 68, Rochester Defs. Atty. Decl. ¶ 22).  Given

their motion (discussed below) for judgment on pleadings, the Rochester defendants argue that

plaintiff's motion should be denied (see id. ¶ 26).  Alternatively, the Rochester defendants

conclude that they complied with the Order (including paying the sanction in pre-paid postage)

and thus plaintiff's motion for reconsideration should be denied (id. ¶¶ 23-24, 27, Ex. A).

The Monroe County defendants respond that the motion for reconsideration is directed at

the Rochester defendants (Docket No. 83, Monroe County Defs. Atty. Decl. ¶ 5; Docket No. 83,

Monroe County Defs. Memo. at 3).  Alternatively, to the extent this motion applied to them, the

Monroe County defendants argue that plaintiff's reconsideration motion is untimely under this

Court's Local Civil Rule 7(d)(3), which require Rule 59(e) motions to be filed and served within

28 days after entry of the challenged judgment (Docket No. 83, Monroe County Defs. Atty. Decl.

¶ 5.1; Docket No. 83, Monroe County Defs. Memo. at 3-4).  The Order at issue was entered on

June 19, 2013, with a timely Rule 59(e) motion due by July 17, 2013 (Docket No. 83, Monroe

County Defs. Memo. at 4).  Plaintiff's motion was filed on July 26, 2013 (id.; cf. Docket No. 63),

although that motion was dated July 23, 2013, received in the Chambers of the undersigned on

July 25, 2013, and entered by the Court Clerk on the next day.  Thus, the Monroe County

defendants conclude that this Rule 59(e) motion is untimely (Docket No. 83, Monroe County

Defs. Memo. at 4).  On the substance, these defendants argue that reconsideration is not warranted here under either Rule 59(e) or 60(b) (id. at 4-6).

Plaintiff initially objected to not receiving the Rochester defendants' papers (Docket No. 74; cf. Docket No. 76, Order of Aug. 20, 2013, at 3).  Next, plaintiff objects to the finding that the Rochester defendants were timely in making their initial disclosure because the disclosures were due October 23, 2012, and the stay of discovery (if applicable to these defendants) was not issued until October 25, 2012 (Docket No. 82, Pl. Decl. ¶¶ 16, 18(a)).  He then recites the subsequent proceeding history in which Amended Scheduling Orders did not extend the initial disclosure deadline and the Rochester defendants later arguing that they were attempting to produce relevant materials (id. ¶¶ 18(b)-(f), 19).  As for the authorizations to release sealed documents, plaintiff argues that the Rochester defendants were at fault by not commencing the unsealing process and as a result plaintiff concludes that he was blameless (id. ¶ 22).

### Second Pending Motion:  Plaintiff's Motion for Leave to Amend and Supplement the Complaint (Docket No. 66)

Having learned the names of the unnamed officers, plaintiff submits essentially a Third Amended Complaint formally naming the two Jane Doe offices as well as correcting the names of the officer known only by his badge number and by a first initial (Docket No. 66).  Plaintiff now identifies Rochester Police officers Kelley Lusk, Anthony Mazurkiewicz, and officer Dempsey (badge number ROC2122) as well as the full name of Erie County Sheriff's Deputy Richard Pozzuolo (id., Notice of Motion at 1).

The Monroe County defendants state that they do not object to the amendment, consisting of correcting the identity of defendant "R. Pozzoulo #3481" to Richard Pozzoulo (Docket No. 83, Monroe County Defs. Atty. Decl. ¶ 6; Docket No. 83, Monroe County Defs. Memo. at 3).

The Rochester defendants did not address plaintiff's motion for leave to file a Third Amended Complaint.

***Third Pending Motion:  Rochester Defendants' Cross-Motion for Judgment on the Pleadings (Docket No. 68)***

Based upon what is plaintiff's Second Amended Complaint (Docket No. 12), the Rochester defendants argue that plaintiff fails to state a claim as against them (Docket No. 68). First, the Rochester defendants construe plaintiff's claims against the individual defendants in the official capacities as actions against the City of Rochester and should be dismissed as to the individual defendants (id., Rochester Defs. Memo. at 5-6).  Next, they deny that the City of Rochester has respondeat superior liability because plaintiff fails to allege a policy that lead to the violation of his rights or that the City failed to properly train its police officers (id. at 6-8). The Rochester defendants, however, filed this cross-motion prior to Chief Judge Skretny's decision rejecting similar arguments as to the Monroe County defendants' motion for judgment on the pleadings (cf. Docket No. 73, Order at 6).

In the August 16, 2013, Order, Chief Judge Skretny found that plaintiff alleged that Monroe County had a custom, policy, or practice of failing to adequately train its deputies in the proper booking procedures, where plaintiff claimed that the policy caused him to be charged with drug possession when he did not possess any drugs (Docket No. 73, Order at 6), accepting these

10

as factual allegations sufficient to state a claim (by a <u>pro se</u> plaintiff) to resist a motion to dismiss (<u>id.</u>, citing <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011); <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007)).

Alternatively, the Rochester defendants argue that the individual defendants ought to enjoy qualified immunity since there was probable cause to arrest plaintiff for solicitation of a prostitute (Docket No. 68, Rochester Defs. Memo. at 9-10).

Next, the Rochester defendants conclude that plaintiff fails to specify a theory for punitive damages against the individual defendants and the City is immune from punitive damages under <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) (<u>id.</u> at 11-12).

In addition to objecting to the timeliness of this cross-motion (Docket No. 82, Pl. Decl. ¶¶ 24-29; <u>see</u> Docket No. 74), plaintiff opposes granting judgment to the Rochester defendants or recognizing qualified immunity for the Rochester officers (Docket No. 82, Pl. Decl. ¶¶ 30-32; Docket No. 82, Pl. Memo. at 3-6). Plaintiff does not address the applicability of punitive damages against these defendants.

*Plaintiff's Motion to Extend Discovery Deadline (Docket No. 70)*

While this series of motions was pending, plaintiff also moved for an extension of time to conduct discovery (Docket No. 70). This motion first was granted in part, insofar as the current Scheduling Order (<u>see</u> Docket No. 46) deadlines were held in abeyance pending resolution of the other motions, but denied in not extending deadlines (Docket No. 72). After Chief Judge Skretny's Order (Docket No. 73), the stay of discovery formally was lifted, and an amended Scheduling Order was entered, granting this motion (Docket No. 76).

DISCUSSION

I.     Standard

A.     Reconsideration and Sanctions

Plaintiff cites Federal Rule of Civil Procedure 59(e) as the basis for this Court to reconsider its previous Order granting him relief he sought. As discussed by the Rochester defendants (Docket No. 68, Memo. at 12), while no formal guidelines exist for reconsideration, a judgment may be altered pursuant to Rule 59(e) to prevent manifest injustice; to correct errors of law or fact; the availability of new evidence; or an intervening change in the law, see Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

But no judgment has been entered here. Rather, plaintiff seeks reconsideration of an interim Order. Rule 59(e) governs altering **judgments**. Altering or reconsidering interim **Orders** is governed by Rule 60. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for a mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud, misrepresentation, or misconduct by an opponent; a void judgment; a satisfied judgment; or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(1)-(6). A motion under Rule 60(b) is addressed to the discretion of this Court, 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2857, at 254 (Civil 2d ed. 1995). This Court also can correct clerical mistakes, oversights, or omissions, Fed. R. Civ. P. 60(a).

The motion to compel under Rule 37 does not have an express reconsideration provision, although (as previously discussed, Docket No. 53, Order of June 19, 2013, at 5-6) the decision to compel discovery and the scope of that compulsion is within this Court's discretion. One court

has noted that reconsideration of a Rule 37 fee award is "an extraordinary remedy and is granted only in exceptional circumstances," <u>Cook v. IPC Int'l Corp.</u>, No. 09-cv-275-JPG, 2012 U.S. Dist. LEXIS 154512, at *4-5 (S.D. Ill. Oct. 29, 2012) (citing cases).

B.      Leave to Amend the Complaint

Under Rule 15(a), amendment of pleadings after the time to do so as of right requires either consent of all parties (apparently not present here) or by leave of the Court.  Under Rule 15(a) motions for leave to amend the complaint are to be freely given when justice requires. Granting such leave is within the sound discretion of the Court.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330 (1971).  "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'"  <u>Foman</u>, <u>supra</u>, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).

If a plaintiff is proceeding <u>pro se</u>, leave to amend should be freely granted, <u>Frazier v. Coughlin</u>, 850 F.2d 129, 130 (2d Cir. 1988) (<u>pro se</u> should be freely afforded opportunity to amend).

C.      Judgment on the Pleadings

Finally (<u>see also</u> Docket No. 38, Report & Rec. of Jan. 30, 2013, at 4-5, <u>set aside on other grounds</u>, Docket No. 73), under Rule 12(c) for judgment on pleadings, all well pleaded factual allegations are assumed to be true and to be construed in the light most favorable to the petitioner, <u>Patel v. Searles</u>, 305 F.3d 130, 134 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 907 (2003);

Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57, 61 (2d Cir. 1985), but this presumption under Rule 12(c) does not apply to conclusory allegations, BCCI Holdings v. Pharaon, 43 F. Supp. 2d 359, 364 (S.D.N.Y. 1999). A motion under Rule 12(c) should be granted if the moving party is entitled to judgment as a matter of law, Burns Int'l Sec. Serv. v. International Union, 47 F.3d 14, 16 (2d Cir. 1994).

A motion for judgment on the pleadings under Rule 12(c) is governed by the standard similar to that for a motion to dismiss for failure to state a claim under Rule 12(b)(6), wherein the Court accepts as true all allegations in the Complaint and draws all inferences in favor of the non-movant, here plaintiff. Wynn v. Welch, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.); see Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). As under Rule 12(b)(6), the Court cannot render a judgment on the pleadings dismissing a complaint under Rule 12(c) unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); but cf. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Like a Rule 12(b)(6) motion, a Rule 12(c) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002). As previously noted for codefendants Monroe County defendants' motion (Docket No. 38, Report & Rec. at 5), pro se complaints are to be liberally construed, interpreted to raise

'the 'strongest claims that it suggests,'" <u>Hill</u>, <u>supra</u>, 657 F.3d at 122 (citations omitted) (Docket No. 25, Monroe County Defs. Memo. at 4).

II.    Application

This Court first will address the non-dispositive motions by plaintiff to reconsider his motion to compel and the relief ordered and then his motion for leave to amend the Complaint (Docket Nos. 63, 66). Then, this Court will next consider with the Rochester defendants' cross-motion for judgment on the pleading dismissing the case as to them (Docket No. 68).

III.    Reconsideration of Discovery Sanctions

A.    Merits

First, there is no basis for reconsideration of the discovery Order under Rules 59, 60, or 37. The first two cited rules require the party seeking reconsideration to show some basis for this Court to revisit its decision, while Rule 37 itself makes no provision for reconsideration of discovery Orders. Plaintiff does not allege a mistake (clerical or otherwise), fraud by defendants, newly discovered evidence or change in the law to warrant revisiting the grant of discovery relief he sought under either Rules 59 (for altering judgments) or 60(a) or (b) (for altering Orders). Plaintiff merely argues that preclusion of evidence and dismissal of a defense is warranted because he claims that defendants twice failed to produce discovery or initial disclosure (Docket No. 63, Pl. Decl. ¶ 8), as he argued initially (<u>see generally</u> Docket No. 47, Pl. Decl.).

1.    Emotional Damages for Discovery Motion

Plaintiff now argues that he should also recover essentially for the pain and suffering he endured in being compelled to make his discovery motion.

Rule 37 does not provide for recovery of damages beyond the reasonable expenses for making the motion to produce, and not such as plaintiff seeking for his emotional injuries that purportedly resulted from the delays in producing discovery. Plaintiff has recovered his reasonable motion expenses here, that is, the costs for duplication and postage for sending his moving papers (see Docket No. 53, Order of June 19, 2013, at 8; Docket No. 61, Order of July 9, 2013, at 2 (awarding reasonable expenses based upon plaintiff's postage and duplicating costs)). Other relief sought by plaintiff (such as recovery for his motion-related pain and suffering or removal of the Rochester defendants' counsel from this case) is **denied**.

Furthermore, the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) ("PLRA"), also prohibits a prisoner confined in jail or prison for bringing a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." Usually, this provision is directed at causes of action by inmates seeking to recover for mental injury while in prison, but that provision also addresses where an inmate moves for damages for emotional or mental injury without showing physical injury in a discovery motion.

Here, plaintiff, an inmate bringing an emotional or mental damages claim while in custody, only alleges physical injury in writer's cramp (he "wrote out motions by hand, causing plaintiff stiff hand and fingers") from writing repeated motions and requests to counsel, as well as the anguish and anxiety in not having discovery produced and resulting motion practice (see Docket No. 63, Pl. Decl. ¶ 11). This is not a sufficient physical injury allegation for an inmate to assert a mental or emotional injury claim under the PLRA, see Mitchell v. Horn, 318 F.3d 523, 533, 534-35 (3d Cir. 2003) (requiring more than a de minimis physical injury to permit emotional or mental claim under the PLRA, citing other circuits); Dolberry v. Levine, 567 F. Supp. 2d 413,

418 (W.D.N.Y. 2008) (Larimer, J.) (skin rash held to be a de minimis physical injury that does not give rise to claim for emotional damages under PLRA), even if such a claim were allowed for a motion to compel discovery. Additionally, under Rule 37 movants are required to attempt in good faith to resolve the discovery dispute before making their motion in order to obtain relief or recover reasonable motion expenses, <u>see</u> Fed. R. Civ. P. 37(a)(1), (5)(A), thus the activities plaintiff did in making this motion (whatever their toll on him physically or emotionally) were necessary and cannot be claimed as an motion expense.

The recovery of the costs for making the motion to compel suffices to make the movant whole and there is no recovery for whatever anguish claimed by that party in having to make the motion. Plaintiff's motion to reconsider and recover essentially emotional damages is **denied**.

2.      Default Judgment and Evidence Preclusion

Plaintiff alternatively seeks reconsideration of the denial of entry of a default judgment against the Rochester defendants or evidence preclusion against them for failing to produce (Docket No. 63, Pl. Decl. ¶¶ 8, 10, at page 3). This motion also is **denied**. Given the stay of discovery (which this Court intended to include compelling late initial disclosure) when plaintiff sought production from the Rochester defendants and the subsequent Order compelling this disclosure, the extreme remedies of entry of default or precluding defense evidence are not warranted here. Plaintiff has not raised new circumstances or change in law to justify reconsideration of this matter.

B.      Timeliness of Plaintiff's Motion

Although the motion appears directed at the Rochester defendants, the Monroe County defendants raise the timeliness of plaintiff's Rule 59(e) motion for reconsideration under this

Court's Local Rule 7(d)(3), which requires Rule 59(e) motions to be filed within 28 days of entry of the judgment sought to be reconsidered. Here, plaintiff filed his motion 36 days later, on July 23, 2013.[7]

This may be grounds for denying plaintiff's motion but, as the Monroe County defendants concede, the Order plaintiff seeks to reconsider did not apply to those defendants. The Monroe County defendants had a stay of discovery as to them while their motion for judgment on the pleadings was pending (Docket Nos. 25 (defense motion), 29 (defense request for stay of discovery), 30 (Order staying discovery)). So the Order compelling discovery from other parties plaintiff seeks reconsidered does not apply to the Monroe County defendants.

Timeliness also would be grounds for denial if this were truly a **Rule 59(e)** motion. But, as discussed above, plaintiff's reconsideration of an Order motion is really under **Rule 60** and, as noted by these defendants (Docket No. 83, Monroe County Defs. Memo. at 3), this Court's Local Rule 7(d)(3) does **not** apply its 28-day deadline for a Rule 60(b) motion. Rule 60 contains its own internal deadline; that a Rule 60(b) motion "must be made within a reasonable time–and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding," Fed. R. Civ. P. 60(c)(1).

---

[7]Plaintiff proceeding as an inmate would enjoy the so-called "prison mail box rule," in which the Court recognized that (as an inmate) plaintiff does not have direct control of his communication that others would enjoy outside of confinement. A pro se prisoner litigant's papers are deemed to have been filed when they are placed in the hands of prison officials for mailing, see Houston v. Lack, 487 U.S. 266, 271 (1988); see also Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993), modified on reh'g, 25 F.3d 81 (2d Cir. 1994). If the date of the Certificate of Service and of the moving papers of July 23, 2013, is used as the transmission date, the prison mail box rule would not save the motion from a challenge of its timeliness.

As a Rule 60 motion filed by a <u>pro se</u> party, plaintiff's motion for reconsideration here was filed within a reasonable time and well within one year of entry of the Order sought to be reconsidered. Therefore, plaintiff's motion to reconsider is **timely**, but meritless and is **denied**.

IV.     Amend Complaint

The amendments here (Docket No. 66, Ex.) name or specify the names of individual defendants either identified as Jane Does or by badge numbers or parts of defendants' names in this action. The Monroe County defendants do not object to the amendment (<u>e.g.</u>, Docket No. 83, Monroe County Defs. Atty. Decl. ¶ 6) and the Rochester defendants have not addressed this putative Third Amended Complaint either generally or in their cross-motion for entry of a judgment dismissing them from this case. Leave to amend is therefore **granted**. The Court Clerk is instructed to replace the "2 Jane Doe Female Rochester New York police officers" with Kelley Lusk and Anthony Mazurkiewicz; replace Officer Dempsey for defendant "badge number ROC2122" and Richard Pozzuolo for defendant "R. Pozzoulo #3481". Plaintiff's motion (Docket No. 66) is **granted**.

As discussed below, the individual Rochester defendants raise in the cross-motion a claim for qualified immunity. Leave to amend to clearly name Lusk, Mazurkiewicz, and Dempsey should be granted so that whatever relief is given to the individual defendants on the qualified immunity claim is provided to the appropriate parties.

V.      Rochester Defendants' Cross-Motion for Judgment on the Pleadings

A.      Allegations of Municipal Policy Against the Rochester Defendants

Plaintiff made similar allegations against the Monroe County defendants as he alleges against the Rochester defendants, in particular about the existence of municipal policies in each governmental defendant regarding training that Chief Judge Skretny found alleged a claim against the Monroe County defendants (see Docket No. 73, Order of Aug. 16, 2013, at 6 1 n.1; compare Docket No. 12, 2d Am. Compl. ¶ 40 (Monroe County defendants) with id. ¶¶ 37, 38 (Rochester defendants); see also Docket No. 66, Ex., Pl. proposed 3d Am. Compl. ¶¶ 38, 39, 41). In Count Three of the Second Amended Complaint, plaintiff alleges that the City of Rochester violated his rights by having a policy of failing to adequately train its officers in conducting undercover sting operations and in improperly posting pictures of wrongfully arrested suspects (Docket No. 12, 2d Am. Compl. ¶¶ 38, 37; see also Docket No. 66, Ex., Pl. proposed 3d Am. Compl. ¶¶ 39, 38).

Under the analysis applied by Chief Judge Skretny to the allegations against the Monroe County defendants (see Docket No. 73, Order at 6), plaintiff has also alleged similar claims against the Rochester defendants by alleging policies that led to violations of his rights. Therefore, the Rochester defendants' cross-motion (Docket No. 68, Rochester Defs. Memo. at 6-9) on these claims should be **denied**.

B.      Punitive Damages

Next, the Rochester defendants argue that the City of Rochester is immune from punitive damages and that the individual City employee defendants are not liable for such damages because plaintiff fails to state a theory for punitive liability.

Punitive damages are not intended to compensate the injured party and usually are to punish a tortfeasor "whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct," City of Newport, supra, 453 U.S. at 266-67. Punitive damages may be awarded in furtherance of the state's "legitimate interests in punishing unlawful conduct and deterring its repetition," BMW of N. Am. v. Gore, 517 U.S. 559, 568 (1996); City of Newport, supra, 453 U.S. at 266-67. Plaintiff here, however, has not alleged either intentional, malicious or unlawful conduct by the individual defendants to warrant punitive relief. This claim should be **dismissed**. The City of Rochester is correct that it enjoys immunity from punitive damages, City of Newport, supra, 453 U.S. at 267, 271; plaintiff's claim for punitive damages against the City of Rochester also should be **dismissed**. Therefore, so much of the Rochester defendants' cross-motion (Docket No. 68, Rochester Defs. Memo. at 11-12) to dismiss the punitive damage claims should be **granted**.

C. Individual Defendants Sued in Their Individual Capacities

The Rochester defendants next object to plaintiff's claims against the officers in their individual capacities. The defense argues that these employees are considered an arm of the City, hence cannot be sued individually (Docket No. 68, Rochester Defs. Memo. at 5-6, citing Nieves v. City of Rochester, No. 08cv6537, 2011 U.S. Dist. LEXIS 24594, at *5 (W.D.N.Y. March 11, 2011) (Larimer, J.). But Judge Larimer, in Nieves, dismissed claims against the Rochester Fire Department since it was the administrative arm of the City of Rochester and not a separate entity subject to suit, id., citing Santiago v. City of N.Y., No. 06 Civ. 15508, 2008 U.S. Dist. LEXIS 56205, at *6-7 (S.D.N.Y. July 21, 2008) (acknowledging that municipal departments, there a police department, that are mere administrative arms of the municipality that have no separate

legal identity cannot be sued).  Judge Larimer separately considered claims against individual defendant officers in that case, but did not dismiss claims alleged in their individual capacity merely because these officers were city employees, <u>Nieves</u>, <u>supra</u> at *3-4.

The Order granting plaintiff's motion for <u>in forma pauperis</u> status granted plaintiff leave to amend only to allege claims against the individual defendants not dismissed by that Order, Monroe County, Sheriff O'Flynn, and the City of Rochester (Docket No. 9, Order of Mar. 23, 2012, at 23 & n. 10, 24-25 & n.11).  Plaintiff did this in alleging his Second Amended Complaint (Docket No. 12), not asserting claims against the Rochester Police Department.  Thus, the remaining issue is whether he alleged claims against the individual City officers in their individual capacities.

For plaintiff's claims against the individual Rochester defendants, he needs to assert facts establishing claims against each defendant, <u>Nieves</u>, 2011 U.S. Dist. LEXIS 24594, at *3-4. "Personal-capacity suits," the Supreme Court held, "seek to impose individual liability upon a government officer for actions taken under color of state law," <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  To establish personal liability in a § 1983 action against a "person" as defined in that act, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," <u>id.</u>; <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Although plaintiff's claims against these individuals in their official capacity is akin to a direct action against the City (<u>see</u> Docket No. 68, Rochester Defs. Memo. at 5), <u>see</u> <u>Hafer</u>, <u>supra</u>, 502 U.S. at 25, plaintiff may state a claim against them in their individual capacities if he alleges that the defendants violated his rights.  The official-capacity and personal-capacity distinction arises from how the officer is sued rather than the capacity in which that officer acted, <u>id.</u> at 27.  In rejecting defendant's argument

that capacity should be determined by the officer defendant's function, the Supreme Court held that a municipal or state officer acting in his or her individual capacity was a "person" under 42 U.S.C. § 1983, id. at 31.

Here, plaintiff sufficiently alleged claims against these individual Rochester defendants in their individual as well as official capacities. Thus, plaintiff's claims against the individual defendants in their individual capacities **should remain** and the Rochester defendants' motion for judgment to the contrary on this point **should be denied**.

> D.     Qualified Immunity

The Rochester defendants argue that the individual officers enjoy qualified immunity (Docket No. 68, Rochester Defs. Memo. at 9-10). Plaintiff argues that qualified immunity is not applicable here, contending that defendants lacked probable cause to arrest him thus not rendering their actions objectively reasonable (Docket No. 82, Pl. Memo. at 4).

> 1.     Standards for Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id. But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity. Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

2.      Application–Existence of Probable Cause Versus Claimed Entrapment

As recently noted by the United States Court of Appeals for the Second Circuit, the first question for qualified immunity analysis is whether the officers violated plaintiff's rights, Gonzalez v. City of Schenectady, No. 11-5403, 2013 U.S. App. LEXIS 17943, at *9 (2d Cir. Aug. 28, 2013), with that right being the right to be free from arrest without probable cause, id. at *15 (compare Docket No. 68, Rochester Defs. Memo. at 10 with Docket No. 82, Pl. Memo. at 4).

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime," Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013), considering only those facts available to the arresting officer at the time and immediately before the arrest, Stansbury, supra, 721 F.3d at 89; Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). This Court must look at "each piece of evidence and considers its probative value, and then 'look[s] to the totality of the circumstances' to evaluate whether there was probable

cause to arrest," <u>Stansbury</u>, <u>supra</u>, 721 F.3d at 89 (quoting <u>Panetta</u>, <u>supra</u>, 460 F.3d at 395). For qualified immunity purposes, the same analysis of probable cause applies to finding whether it was objectively reasonable for the officer to conclude probable cause existed, <u>Stansbury</u>, <u>supra</u>, 721 F.3d at 89 n.3; <u>Jenkins v. City of N.Y.</u>, 478 F.3d 76, 87 (2d Cir. 2007).

Plaintiff was arrested for patronizing a prostitute under New York Penal Law § 230.04. Patronizing a prostitute is defined elsewhere in the Penal Law as when a person solicits or requests another person to engage in sexual conduct with him in return for a fee, N.Y. Penal Law § 230.02(1)(c); <u>see</u> <u>United States v. Bland</u>, 384 Fed. Appx. 22, 24 (2d Cir. 2010) (summary order). Agreement is not required for an arrest for patronizing a prostitute, <u>Bland</u>, <u>supra</u>, 384 Fed. Appx. at 24.

The parties here dispute whether plaintiff agreed to engage in sexual conduct with the officer posing as a prostitute, with plaintiff claiming entrapment (<u>compare</u> Docket No. 68, Rochester Defs. Memo. at 10 <u>with</u> Docket No. 82, Pl. Memo. at 6). From the allegations in the Second Amended Complaint (Docket No. 12, ¶¶ 13-22), as reasserted in the proposed (and now approved) third Amended Complaint (Docket No. 66, Ex., ¶¶ 16-23), plaintiff alleges that he backed up to approach the Jane Doe officers, asked if they were the police (that the officers were not from that neighborhood and were not familiar to him) and, after they denied being the police, plaintiff said "well y'all get in." One of the officers countered that they would not enter the vehicle there but would do so a block away and then propositioned plaintiff. Although plaintiff alleges that he did not respond to the proposition and drove away not interested in a prostitute, the officers could not have known plaintiff's intention when he was subsequently arrested. Instead of driving away at the beginning of his encounter with the officers, plaintiff showed

interest by engaging in a conversation and expressed his willingness to have the officers enter his vehicle.  By silently driving away, the officers did not know if plaintiff was going to a tacitly agreed upon rendevous location or was driving away not interested in the proposition.  For probable cause analysis, the officers had sufficient probable cause to warrant qualified immunity. As presented in the pleadings, it was objectively reasonable for arguable probable cause to arrest plaintiff and, as a result **qualified immunity should be granted to the individual Rochester defendants** for that arrest, see Gonzalez, supra, 2013 U.S. App. LEXIS 17943, at *16.

This is similar to Pinter v. City of New York, 448 Fed. Appx. 99 (2d Cir. 2011), cert. denied, ___ U.S. ___, 133 S. Ct. 191 (2012), where plaintiff challenged the probable cause for his  arrest for prostitution.  In a summary order, the Second Circuit held that the officers there had probable cause, even to the point of possible entrapment, 448 Fed. Appx. at 105 & n.5 (court did not consider whether undercover officer's tactics rose to the level of entrapment since "a police officer's participation in such activity does not constitute a constitutional violation," quoting DiBlasio v. City of New York, 102 F.3d 654, 656-57 (2d Cir. 1996)), and the defendants were thus entitled to qualified immunity

The allegation of entrapment does not vitiate probable cause, Jackson v. Seewald, No. 11 Civ. 5826, 2012 U.S. Dist. LEXIS 62442, at *26 (S.D.N.Y. Mar. 14, 2012) (Francis, Mag. J.); see Labensky v. Nassau County, 6 F. Supp. 2d 161, 177 (E.D.N.Y. 1998), aff'd sub nom. Labensky v. Rossi, No. 98-7512, 1999 U.S. App. LEXIS 4241 (2d Cir. Mar. 15, 1999).  The mere possibility of an innocent explanation consistent with the facts does not negate the existence of probable cause, United States v. Nakouzi, No. 3:05cr154, 2005 U.S. Dist. LEXIS 31248, at *28-29 (D. Conn. Nov. 30, 2005), citing United States v. Martin, 426 F.3d 68, 87 (2d

Cir. 2005); United States v. Fama, 756 F.2d 834, 838 (2d Cir. 1985). Another court held that "an investigative officer's participation in an entrapment does not violate the target's constitutional rights, even though entrapment might be established as a defense to the criminal charge," Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1988); see Almonte v. Florio, No. 02 Civ. 6722, 2004 U.S. Dist. LEXIS 355, at *13 (Jan. 13, 2004); but cf. Lewis v. Meloni, 949 F. Supp. 158, 162 (W.D.N.Y. 1996) (Feldman, Mag. J.). In Lewis, a consent case on defendants' summary judgment motion, Magistrate Judge Feldman distinguished entrapment from planting evidence upon the innocent person, stating that "while 'entrapment' and 'planting evidence' of a crime on an innocent person may be offspring of the same family of offensive police conduct, the latter, if proven, clearly supports a § 1983 action," Lewis, supra, 949 F. Supp. at 162 (citations omitted).

Entrapment may have provided a defense in the prosecution had the People pursued these charges but it does not nullify probable cause to arrest plaintiff. Therefore, the individual Rochester defendants' motion for judgment dismissing this case as to them on qualified immunity (Docket No. 68, Rochester Defs. Memo. at 9-10) based upon probable cause to arrest plaintiff should be **granted**.

VI.     Result of These Motions

In granting plaintiff's motion to amend the Complaint (Docket No. 66), the unknown or inaccurately identified defendants are now known. If the recommendations in this Report are adopted as to the Rochester defendants' cross-motion for judgment on the pleadings (Docket No. 68), this case proceeds against some of them (namely the City of Rochester) and (with the denial in part of the Monroe County defendants' motion, Docket No. 73) the other remaining defendants.

Plaintiff's motion (Docket No. 63) to reconsider the Order compelling discovery and the relief granted there is denied. The schedule in this case has been separately amended (Docket No. 76; see Docket No. 70 (plaintiff's motion)).

CONCLUSION

For the reasons stated herein, plaintiff's motion (Docket No. 63) to reconsider the Order (Docket No. 53) to compel the Rochester defendants to produce initial disclosure (Docket No. 47) is **denied**. Plaintiff's motion for leave to amend the Complaint (Docket No. 66) is **granted**, the Court Clerk is instructed to amend the caption in this action to replace defendants "2 Jane Doe Female Rochester New York police officers" with Kelly Lusk and Anthony Mazurkiewicz; and replace Officer Dempsey for defendant "badge number ROC2122" and Richard Pozzuolo for defendant "R. Pozzoulo #3481".

It is further recommended that the Rochester defendants' cross-motion for judgment on the pleadings (Docket No. 68) be **denied in part, granted in part** (granted to dismiss plaintiff's punitive damages claims and dismissing his claims against the individual Rochester defendants on qualified immunity grounds).


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
_____
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
October 2, 2013