UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
FEB 1 4 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

QUINTIN A. NOWLIN,

                Plaintiff,

    -vs-

MONROE COUNTY, et al.,

                Defendants.

No. 11-CV-00712(WMS)(MJR)
**Report and Recommendation**

## I.    Introduction

This case has been referred to the undersigned by Hon. William M. Skretny for all pre-trial matters, including preparation of a Report and Recommendation on dispositive motions. (Dkt. Nos. 220, 224).

## II.    Procedural Background

This action, brought by *pro se* plaintiff Quintin Nowlin ("Plaintiff"), asserts claims against several law enforcement officers, Monroe County, and the City of Rochester. Plaintiff initially filed his complaint on August 25, 2011, asserting that his rights under the United States and New York State Constitutions were violated during the course of an arrest on August 5, 2010.

According to the Third Amended Complaint,[1] Plaintiff asserts that, while delivering keys to a friend, he was solicited by two Rochester Police Officers posing as prostitutes in an undercover sting operation. (Dkt. No. 66, ¶¶ 14-21). After speaking with the two undercover officers and driving away, Plaintiff was pulled over by Rochester

---

[1] The Third Amended Complaint, which contains the same causes of action enumerated in the Second Amended Complaint, became the operative pleading pursuant to this Court's (Scott, M.J.) Report and Recommendation dated October 2, 2013. (Dkt. No. 89). It was never actually filed as a separate docket item.

Police Officer Dempsey, searched, and arrested for solicitation of a prostitute. (*Id.*, ¶¶ 23-24). He was then transferred to the Monroe County Sheriff's Department for booking. (*Id.*, ¶¶ 25-26). Once in the booking area, Monroe County Sheriff's Deputy Pozzuolo recovered a plastic bag containing what appeared to be drugs and later, along with Rochester Police Officer Coniglio, charged Plaintiff with possession of drugs. (*Id.*, ¶¶ 27-28).

As written, the Third Amended Complaint contains five "counts" or causes of action. Count One alleges that Plaintiff was falsely arrested without probable cause by Rochester Police Officers Dempsey, Lusk, and Mazurkiewicz for soliciting a prostitute. (Dkt. No. 66, ¶¶ 29-31).[2] Count Two alleges Rochester Police Officers Coniglio and Dempsey, as well as Monroe County Sheriff's Deputy Pozzuolo, falsely arrested Plaintiff without probable cause for criminal possession of a controlled substance and promoting prison contraband. (*Id.*, ¶¶ 33-37). Count Three alleges that the City of Rochester had a custom, policy, or practice whereby the City abused process in conducting its prostitution stings. (*Id.*, ¶¶ 38-40). Count Four contends that Monroe County had a policy of negligently handling seized materials during booking, attributing ownership of contraband to the wrong party. (*Id.*, ¶¶ 41-42). Finally, Count Five states that Monroe County Sheriff O'Flynn failed to protect Plaintiff from the false and malicious arrest for drug possession during the booking process, and further failed to train and supervise his subordinates. (*Id.*, ¶¶ 43-44).[3]

---

[2] Plaintiff's claims in Count One were dismissed against the individual City Defendants on qualified immunity grounds in a previous order. (Dkt. No. 89 at 23-27).

[3] It appears that Plaintiff has abandoned his individual claims against Sheriff O'Flynn to the extent they alleged supervisory liability and failure-to-protect or intervene (Count Five), as well

Monroe County Sheriff O'Flynn, Monroe County Sheriff's Deputy ("Dep.") Pozzuolo, and the County of Monroe are collectively referred to herein as the "County Defendants." Rochester Police Officers ("P.O.") Coniglio, Dempsey, and Lusk, the City of Rochester, and the Rochester Police Department are referred to herein as the "City Defendants."

On October 5, 2012, the County Defendants filed a timely motion for judgment on the pleadings (Dkt. No. 25), which was granted in part with respect to the dismissal of Plaintiff's New York State Constitution claims and denied as to the federal civil rights claims based on municipal or supervisory liability. (Dkt. No. 73 at 3-6, 7). The City Defendants did not make an initial dispositive motion at that time. (Dkt. No. 38 at 3).

On August 9, 2013, the City Defendants filed a cross-motion for judgment on the pleadings in which they argued that Plaintiff failed to state a claim against them. (Dkt. No. 68). Applying the same analysis as the Court's previous Decision and Order addressing the County Defendants' motion for judgment on the pleadings, the Court denied the City Defendants' motion with respect to the City's municipal policies and training. (Dkt. No. 89 at 20, *see also* Dkt. No. 173 (adopting Report & Recommendation)). The Court further dismissed Plaintiff's claim for punitive damages against the City Defendants and dismissed the claims against the individual City of Rochester defendants on qualified immunity grounds. (*Id.* at 28).

Plaintiff was appointed counsel on April 21, 2014. (Dkt. No. 170). With the assistance of counsel, Plaintiff moved for reconsideration of the Court's April 30, 2014,

---

as his claims in Counts Two and Three that the City Defendants committed abuse of power in placing Plaintiff's photo as an alleged patron of a prostitute on a billboard on Lyell Avenue.

Order concerning punitive damages and qualified immunity as it pertained to the City Defendants. (Dkt. No. 179). That motion was denied on July 25, 2014. (Dkt. No. 184).

Following discovery and multiple extensions of time, both sets of defendants filed motions for summary judgment. (Dkt. Nos. 223, 226). Plaintiff opposed those motions, and cross-moved for summary judgment against both the County and City Defendants (Dkt. Nos. 227, 228). The County Defendants replied, arguing, *inter alia*, that Plaintiff's opposition and cross-motion were untimely. (Dkt. No. 230). In response, Plaintiff filed a motion to amend the scheduling order to submit his cross-motion for summary judgment against all defendants pursuant to Fed. R. Civ. Proc. 6(b). (Dkt. No. 233).

There are now five motions currently pending before the Court: the County Defendants' motion for summary judgment (Dkt. No. 223), the City Defendants' motion for summary judgment (Dkt. Nos. 226), Plaintiff's cross-motions for summary judgment as to the County (Dkt. No. 227) and the City Defendants (Dkt. No. 228),[4] and Plaintiff's motion for extension of time to file his already-submitted cross motions under Fed. R. Civ. Proc. 6(b). (Dkt. No. 233).[5]

---

[4] In support of his cross-motion for summary judgment, Plaintiff's counsel submitted an Attorney Declaration that is rife with legal argument. Counsel is reminded that "declarations of counsel are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, [ ] not to advance factual averments or legal arguments." *Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 Fed. Appx. 34 (2d Cir. 2015).

[5] As an initial matter, the Court recommends, without further discussion, that Plaintiff's motion to extend time to submit a dispositive motion pursuant to Fed.R.Civ.Proc. 6(b) (Dkt. No. 233) should be granted as the one-day delay in submitting his opposition papers was not excessive and did not result in prejudice to Defendants. *See Kendall v. Fisse*, No. 00 CV 5154, 2004 WL 1196811, at *1 n. 1, *aff'd*, 149 Fed.Appx. 19 (2d Cir. 2005). Plaintiff's counsel has acknowledged the error and notes that communications with Plaintiff, who is incarcerated, is limited to letter correspondence. (Dkt. No. 233, ¶¶ 7-10).  It is therefore recommended that Plaintiff's opposition papers be deemed timely filed.

## III.   Discussion

### A.   Summary Judgment Standard

Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). Once the moving party has made a properly supported showing of the absence of any genuine issue as to all material facts, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). While "[a]ll reasonable inferences and any ambiguities are drawn in favor of the nonmoving party," *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990), to defeat summary judgment the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### C.   County Defendants

The County Defendants move for summary judgment on the Second and Fourth counts in the Third Amended Complaint on the grounds that: (1) the County Defendants are not liable for false arrest or malicious prosecution; (2) Plaintiff's failure-to-intervene claim fails as to false arrest;[6] (3) Plaintiff fails to prove a favorable result in the

---

[6] *See supra*, n.2.

underlying criminal case; (4) Dep. Pozzuolo is entitled to qualified immunity; (5) Plaintiff fails to state a claim against the County or Sheriff O'Flynn on the basis of *respondeat superior*; (6) Plaintiff fails to state a *Monell* claim against the County or Sheriff O'Flynn; (7) Plaintiff failed to exhaust his administrative remedies; and (8) Plaintiff's request for punitive damages must be dismissed. (Dkt. No. 223-24 at 5-24).

For the following reasons, the Court recommends that the County Defendants' motion for summary judgment be granted, Plaintiff's cross-motion be denied, and the Third Amended Complaint be dismissed with respect to the County Defendants.

## 1.   Facts[7]

Plaintiff was arrested on the evening of August 5, 2010, on Lyell Avenue in the City of Rochester for solicitation of a prostitute. Upon his arrest by Rochester Police Officers, he was searched and patted down. Plaintiff was transferred to a lot to await a transport vehicle operated by the Rochester Police Department. Prior to entering the transport vehicle, Plaintiff underwent a second pat-down search, which revealed no weapons or narcotics, but did reveal a substantial amount of money.   During the searches by the Rochester Police Officers, he did not remove his clothing or shoes, nor did he lift up any part of his clothing.

Plaintiff was transported to the Monroe County Jail on Plymouth Avenue in the City of Rochester for booking. Plaintiff's name was called, he had his photograph taken, and he entered a separate room, referred to as the body scan room or scan room.

---

[7] The Court notes that Plaintiff's opposition papers fail to comply with Loc. R. Civ. Proc. 56(a)(1) (eff. 01/01/2016) in that it does not contain correspondingly numbered paragraphs or specifically controvert the defendants' purported facts. Although Plaintiff's cross-motion sets forth some facts that appear to somewhat contradict the County and City Defendants' versions, the majority of the relevant, material facts are not disagreed upon, and nothing set forth by Plaintiff alters the Court's analysis.

Plaintiff did not notice anything on the floor of the scan room when he entered. He was then placed with his back against a screen while Sheriff's Deputies scanned him by x-ray machine, which is used primarily to detect weapons.

Dep. Pozzoulo was assigned to booking on August 5, 2010. During the booking process, an arrestee takes off his shoes, coat, and belt, and receives a pat-search over one layer of clothing. According to Dep. Pozzoulo, Sheriff's Deputies search the scan room between arrestees. (Dkt. No. 223-18 [Pozzoulo EBT] at 33). Sheriff O'Flynn's General Order Nos. 34-09 and 28-J-09, are silent as to procedures for checking a scan room for contraband in between processing detainees. If contraband is found on an individual, it is immediately turned over to the Rochester Police Department and the incident is logged.

During his deposition, Dep. Pozzoulo could not recall whether he performed a check for any contraband in the scan room prior to his encounter with Plaintiff, and could not recall who else was present in the scan room besides himself and Plaintiff. (Pozzoulo EBT at 14, 33).

On August 5, 2010, Dep. Pozzoulo conducted a pat-down of Plaintiff following the x-ray scan, and testified that a plastic bag containing drugs "fell out" of Plaintiff's right pant leg to the ground. (Pozzoulo EBT at 29-30). Dep. Pozzoulo asked if the contraband belonged to Plaintiff, who replied that it did not. Dep. Pozzoulo turned the plastic bag of suspected drugs over to Rochester Police. Rochester Police also seized Plaintiff's funds from the Monroe County Jail after discovery of the contraband.

Sheriff O'Flynn's General Order to the Jail Bureau, No. 28-J-09 specifies that all searches completed during booking must be documented on a Prisoner Data Report.

Dep. Pozzoulo could not recall if he documented any of the searches or the contraband found on Plaintiff that evening. (Pozzoulo EBT at 37).

On the evening of August 5, 2010, Dep. Pozzoulo completed a Supporting Deposition regarding the recovery of contraband, (Dkt. No. 223-6), while an Investigation Action Report was completed by P.O. Coniglio and P.O. Dempsey. (Dkt. No. 223-7). A Felony Complaint, signed by P.O. Coniglio, charged Plaintiff with Criminal Possession of a Controlled Substance in the Third Degree and Promoting Prison Contraband in the First Degree. (Dkt. No. 223-8).

On December 14, 2010, a Grand Jury dismissed all of the charges relating to the alleged crimes committed by Plaintiff.

### 2.   False Arrest; Malicious Prosecution

To prevail on a false arrest claim under either Section 1983 or New York law, a plaintiff must establish: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003); *see also Prowisor v. Bon–Ton, Inc.*, 426 F.Supp.2d 165, 171 (S.D.N.Y. 2006) ("A section 1983 claim for false arrest . . . is identical to a claim for false arrest under New York law."). The existence of probable cause to arrest "constitutes justification and is a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted). Probable cause to arrest exists where an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634

(2d Cir. 2000). Whether probable cause to arrest exists "is objective . . . and determined by the totality of the circumstances." *Prowisor*, 426 F.Supp.2d at 172. The Court "must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996).

The undisputed facts establish that probable cause existed to arrest Plaintiff for drug possession and contraband. Plaintiff testified that he did not observe any contraband on the ground when he entered the scan room on August 5, 2010. (Pl. EBT at 56.) During a pat-search of Plaintiff, Dep. Pozzoulo observed a bag of contraband fall to the ground from Plaintiff's pant leg, and noted the same in his Supporting Deposition. (Dkt. No 227-12). Plaintiff was also found to possess a significant amount of money as noted during a previous search by the Rochester Police. (Dkt. No. 228-3 at 5). Plaintiff does not dispute that contraband was recovered while he was in the scan room in close proximity to him, only that it did not belong to him. (Pl. EBT at 34). These facts are sufficient to establish that probable cause existed to arrest Plaintiff for criminal possession a controlled substance and promoting prison contraband. *See, e.g., Coleman v. Hauck*, No. 09-CV-1391, 2012 WL 4480684, at *8 (N.D.N.Y. Sept. 26, 2012) (sufficient probable cause to arrest plaintiff for criminal possession of a controlled substance in the 7th degree where officer observed clear plastic baggie with white residue falling from plaintiff's waistband); *People v. Schell*, 261 A.D.2d 422 (2d. Dep't 1999) (trooper's observation of plastic bag containing white powder falling to ground from defendant's shorts established probable cause to arrest).

Moreover, Plaintiff does not allege, much less submit any evidence, that Dep. Pozzoulo provided false testimony, fabricated evidence, or planted the narcotics in the

scan room, such to give rise to an issue of fact to defeat the County Defendants' summary judgment motion. Plaintiff only sets forth admissible evidence that the narcotics were not recovered from his person until the booking search at the County Jail while he was being processed. (Dkt. No. 227-3 at 5-6). And, even if Plaintiff were to suggest that the contraband was planted, such an allegation, without more, is insufficient to withstand summary judgment. *See Jimenez v. City of N.Y.*, No. 15 CIV. 3257, 2016 WL 1092617, at *4 (E.D.N.Y. Mar. 21, 2016) (collecting cases standing for the proposition that unsupported claims of evidence planting cannot survive summary judgment in false arrest and malicious prosecution context).

As to his malicious prosecution claim, "to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations and internal quotation marks omitted). Under New York law, the elements of a malicious prosecution claim are "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Morris v. Silvestre*, 604 Fed. Appx. 22, 24 (2d Cir. 2015) (quoting *Manganiello*, 612 F.3d at 161).

Like a claim for false arrest, "[t]he existence of probable cause is an absolute defense to a cause of action for malicious prosecution." *Maron v. Cnty. of Albany*, 166 Fed. Appx. 540, 541 (2d Cir. 2011). However, "[t]he existence of probable cause at the time of arrest . . . may not be dispositive of the issue as to the malicious prosecution

claim, because . . . evidence could later surface which would eliminate that probable cause." *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 562 (E.D.N.Y. 2011*); see also Gaston v. City of NY*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) ("The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, 'except that [a claim for malicious prosecution] must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest.'") (quoting *Danielak v. City of NY,* 02-CV-2349, 2005 WL 2347095, at *10 (E.D.N.Y. Sept. 26, 2005)). Nevertheless, "in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." *D'Angelo v. Kirschner*, 288 Fed. Appx. 724, 726 (2d Cir. 2008).

Despite the County Defendants' argument to the contrary (Dkt. No. 223-24 at 11-12), the dismissal of Plaintiff's charges constitutes a "favorable termination" for purposes of Plaintiff's malicious prosecution claim. *See Bowman v. City of Middletown*, 91 F.Supp.2d 644, 660 (S.D.N.Y. 2000) ("[T]he proceeding against Bowman was indisputably terminated in his favor when the grand jury voted no true bill."); *Vasquez v. City of N.Y.*, 11-CV-3024, 2013 WL 5519981, at *7 (E.D.N.Y. Sept. 30, 2013) ("there is no question that the grand jury's dismissal of the charges arising from Plaintiff's arrest was a favorable termination.").[8]

---

[8] In support of the position that Plaintiff failed to prove a favorable result, the County Defendants cite to *Delaney v. Gerdon*, 785 F. Supp. 1128, 1129 (E.D.N.Y. 1992). In that case, the plaintiff's charges were dismissed "in the interest of justice" pursuant to N.Y. Crim. Proc. L § 170.40. Here, Plaintiff's charges were dismissed by the Grand Jury pursuant to N.Y. Crim. Proc. L. § 190.75, after determining that the evidence was "not legally sufficient to establish that [Plaintiff] committed such crime or any other offense or that there was not reasonable cause to believe that [he] committed such crime or any other offense." *Delaney*'s holding that a dismissal under

Establishing "favorable termination" status, however, does not cure Plaintiff's failure to demonstrate the absence of probable cause for the criminal proceedings against him in the first instance. Moreover, Plaintiff cannot show that Dep. Pozzoulo acted with malice, which, as the name implies, is an element of a malicious-prosecution claim. *See Flynn–Rodriguez v. City of New York*, 14–CV–2287, 2016 WL 4468186, at *6 (E.D.N.Y. Aug. 24, 2016) ("An essential element of a claim for malicious prosecution is that the defendant acted with malice"). Viewing the facts in the light most favorable to Plaintiff, and, as he appears to concede, Dep. Pozzoulo simply engaged in careless police work by failing to document the multiple searches completed on Plaintiff on the Prisoner Data Report, failing to search the scan room prior to Plaintiff entering, and committing other "procedural shortcomings in booking plaintiff." (Dkt. Nos. 227-3 at 7; 227-11). That is not enough to support a malicious-prosecution claim, or a § 1983 claim in general. *See Wright v. Orleans County*, No. 14–CV–0622, 2015 WL 5316410, at *21 (W.D.N.Y. Sept. 10, 2015) ("investigatory negligence . . . is insufficient to sustain liability for false arrest and malicious prosecution under New York law or § 1983"); *see also Newman v. Township of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014) ("Any discrepancy [between the defendant officer's statements and the facts] at worst shows negligence or perhaps a lack of attention to detail, which does not amount to malicious prosecution").

As probable cause existed to arrest Plaintiff for criminal possession of a controlled substance, the County Defendants are entitled to judgment as a matter of law

---

§ 170.40 'is neither an acquittal of the charges nor any determination on the merits, but "leaves question of guilt or innocence unanswered," is therefore inapplicable here.

with respect to Plaintiff's claim for false arrest and malicious prosecution arising under 42 U.S.C. § 1983 and New York state law.

### 3.   Qualified Immunity

Even if the Court were to find that there were genuine issues of material fact as to whether there was probable cause to arrest Plaintiff, qualified immunity would still shield Dep. Pozzoulo from liability.

Qualified immunity protects government officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In the case of a false arrest claim, even in the absence of probable cause, an arresting officer enjoys qualified immunity from suit if there was "arguable probable cause to arrest." *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists if either: "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). The Second Circuit has stated that arguable probable cause exists "when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) (internal quotation marks and citations omitted) (emphasis in original). The Circuit Court reasoned, "[i]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases

those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Id.*

"This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Courts may deny motions for summary judgment on qualified immunity grounds only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Id.* In the end, qualified immunity "protects government officials when they make 'reasonable mistakes' about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). To assess whether there was arguable probable cause for an arrest, courts are reminded that police officers are "entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences." *Cerrone*, 246 F.3d at 203. Where conflicting versions of the facts exist, however, an officer is entitled to qualified immunity only if "the undisputed facts and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987).

Here, Plaintiff was taken into booking at the Monroe County Jail upon being arrested for soliciting a prostitute. An earlier search recovered a sum of cash in excess of $2,000, and a later pat-search in the booking area of the Jail revealed a bag of suspected narcotics that fell from Plaintiff's pant leg. Even if, as Plaintiff suggests, Dep. Pozzoulo "only noticed alleged contraband when he got to the base of [Plaintiff's] leg," (Dkt. No. 227-1, ¶ 43), it objectively reasonable for Dep. Pozzoulo to believe that there

was probable cause to arrest Plaintiff for drug possession and contraband, and officers of reasonable competence could disagree on whether there was probable cause for the same. It is therefore recommended that Dep. Pozzoulo is entitled to qualified immunity in the alternative.

### 4.    Municipal Liability

A municipality may not be held liable under § 1983 on the basis of *respondeat superior. Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694-95 (1978). Rather, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *See Monell*, 436 U.S. at 691. In order to sustain a § 1983 claim for municipal liability, a plaintiff must show that he suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom. *Monell*, at 694-95. A municipal policy or custom may be established by any of the following: 1) a formal policy, officially promulgated by the municipality, *id.* at 690; 2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483-84; 3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) (plurality opinion); or 4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, Plaintiff alleges that the County of Monroe failed to properly and adequately train Monroe County Sheriff's Deputies in the proper procedures of booking

detainees at the County Jail as a basis of municipal liability. (Dkt. Nos. 227-3 at 9-10; 231, ¶¶ 39-44).

With regard to his failure to train or supervise claim, Plaintiff must ultimately show that:

> (1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

*Young v. County of Fulton*, 160 F.3d 899, 903–04 (2d Cir. 1998) (citing *Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992) (internal quotations and alterations omitted)).

A local government entity's alleged failure to train its employees creates liability under section 1983 only "[i]n limited circumstances." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Indeed, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* The "stringent standard" of deliberate indifference applies to failure-to-train claims. *Id.* In order to prevail, the plaintiff must demonstrate that the municipality was "on actual or constructive notice that a particular omission in [its] training program causes . . . employees to violate citizens' constitutional rights [and] the policymakers chose to retain that program." *Id.* (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

A "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. Plaintiff does not allege, much less submit any direct or

circumstantial evidence of a pattern of conduct to validate his claim. Rather, he simply asserts that the absence of a policy for Deputies to inspect, secure, and/or search the booking area of the County Jail between detainees, and the absence of a policy regarding the use of video footage in the booking process "frequently will result in a constitutional violation, namely false arrest and malicious prosecution." (Dkt. No. 227-3 at 9-10). Where, as here, there is only proof of a single instance of unconstitutional activity alleged, Plaintiff cannot maintain his claim under a municipal liability theory. *See Pittman v. City of N.Y.*, No. 14-CV-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2004) ("A *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice.").

Plaintiff also acknowledges that he did not complain about the booking process to an employee of the Monroe County Sheriff's Office or to Sheriff O'Flynn, as policymaker, which undermines any suggestion that the County Defendants were on notice of the alleged lapses in County Jail booking procedures (Dkt. No. 223-13 at 61). *See Connick*, 563 U.S. at 61 ("when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program . . . .").

Here, Plaintiff has only offered conclusory assertions in support of his claim, and summary judgment is therefore recommended in favor of the County Defendants on Plaintiff's municipal liability claim. *See Flemming v. Goord*, No. 06–CV–562, 2009 WL 4667108 (N.D.N.Y. Dec.8, 2009) (recommending summary judgment in defendants'

favor where plaintiff's conclusory assertions, without more, were insufficient to maintain claims).

Finally, Plaintiff has failed to establish, in opposition to a well-supported summary judgment motion, an underlying constitutional violation. Where there is no underlying violation, there can be no liability for failure to train or supervise. *See Aretakis v. Durivage*, Civ. No. 07–CV–1273, 2009 WL 249781, at *30, (N.D.N.Y. Feb. 3, 2009). Accordingly, there exist no genuine issues of material fact with regard to Plaintiff's *Monell* claims.

For all of these reasons, the Court recommends that the County Defendants' motion for summary judgment be granted, and Plaintiff's cross-motion for the same relief be denied.[9]

### E.    City Defendants

Defendants move for summary judgment on Second and Third Counts of Third Amended Complaint on the grounds that (1) the defendant police officers are entitled to qualified immunity; (2) The Rochester Police Department is not a proper party to this lawsuit; and (3) Plaintiff fails to establish municipal liability (Dkt. No. 226-2 at 2-5).[10]

For the following reasons, the Court recommends that the City Defendants' motion for summary judgment be granted, Plaintiff's cross-motion be denied, and the Third Amended Complaint be dismissed as to the City Defendants.

---

[9] Because the Court recommends granting summary judgment and dismissing all claims against the County Defendants in the Third Amended Complaint, it need not consider the County Defendants' remaining arguments regarding non-exhaustion and punitive damages.

[10] The claims contained in Count One against the individual City Defendants have been previously dismissed from this action. (Dkt. No. 89).

### 1.    Facts

As recounted earlier, Plaintiff was initially arrested by Rochester Police on August 5, 2010, for allegedly soliciting a prostitute. After being taken to the Monroe County Jail for booking and processing, Dep. Pozzoulo recovered a bag of what appeared to be contraband following a pat-search of Plaintiff. The drugs were field tested and came back positive as cocaine. In addition, Plaintiff was found with $2000 in cash on his person.

On the evening of August 5, 2010, Dep. Pozzoulo completed a Supporting Deposition regarding the recovery of contraband, (Dkt. No. 223-6), while an Investigation Action Report was completed by P.O. Coniglio and P.O. Dempsey after returning to the Jail (Dkt. No. 223-7). A Felony Complaint, signed by P.O. Coniglio, charged Plaintiff with Criminal Possession of a Controlled Substance in the Third Degree and Promoting Prison Contraband in the First Degree. (Dkt. No. 223-8).

On December 14, 2010, a Grand Jury dismissed all of the charges relating to the alleged crimes committed by Plaintiff.

### 2.    False Arrest; Malicious Prosecution

Plaintiff asserts that P.O. Conilgio and P.O. Demsey are responsible for false arrest and malicious prosecution relating to the drug and contraband charges stemming from the booking search at the Monroe County Jail. (Dkt. Nos. 228-3, 232). Dep. Pozzuolo, who conducted the pat-search and recovered the contraband, contacted Rochester Police. Upon returning to the Jail, P.O. Conilgio and P.O. Dempsey completed an Investigation Action Report, and P.O. Coniglio signed a Felony Complaint. At some point P.O. Dempsey field-tested the substance, which was positive

for cocaine. The inquiry here focuses on the Rochester Police Officers role in Plaintiff's subsequent arrest.

As stated earlier, "[t]o avoid liability for a claim of false arrest, an arresting officer may demonstrate that either [i] he had probable cause for the arrest, or [ii] he is protected from liability because he has qualified immunity." *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). "An officer is entitled to qualified immunity . . . if he can establish that he had 'arguable probable cause' to arrest the plaintiff," which requires the officer to demonstrate "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (internal quotation mark and citations omitted).

Plaintiff acknowledges that, at the time they completed the Investigation Action Report,  P.O. Coniglio and P.O. Dempsey "knew only that a plastic sandwich bag was on the floor during Plaintiff's processing, and it contained what appeared to be crack cocaine," in addition to cash in the amount of $2,011 found on Plaintiff's person. (Dkt. No. 228-3 at 5). A field test shortly after the contraband was recovered revealed that the substance was positive for cocaine. Plaintiff contends, however, that the Investigation Action Report constituted a "false arrest report for criminal proceedings" because the Report, dated August 5, 2010, stated that "a field test of the crack was conducted by P.O. Dempsey which was positive for cocaine," when said testing did not positively reveal the substance in the recovered bag to be cocaine until August 6, 2010. (Dkt. No. 232 ¶¶ 17-19).

The record shows that Dep. Pozzuolo recovered the plastic bag at approximately 11:30pm on August 5, 2010, and the field testing took place at approximately 1:05am on August 6, 2010, a few hours later. When questioned why the Investigation Action Report was dated August 5, 2010, but indicated that the field test had already been completed, P.O. Dempsey testified that the discrepancy was likely a typographical error due to the date change after midnight during his shift. He further recalled that he and P.O. Coniglio had not even returned to the Jail "until actually the 6th due to the hour." (Dkt. No. 223-15 [Dempsey EBT] at 47, 45-49). It is undisputed that P.O. Dempsey conducted field test on-site at the Jail soo after the substance was recovered, and that it did result in a positive result for cocaine.

"To ascertain the existence of probable cause, we look at the facts as the officers knew them in light of the specific elements of each crime. While an officer need not have concrete proof of each element of a crime to establish probable cause for an arrest, probable cause means more than bare suspicion." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). Here, the officers knew of a larger bag containing multiple, individual bags of a suspected narcotic recovered at or near Plaintiff's pant leg during a pat-search and a large amount of cash recovered from Plaintiff's pocket.  While the officers were not present for Dep. Pozzuolo's booking search of Plaintiff, they relied upon his Supporting Deposition in bringing the charges. Plaintiff does not claim that the officers knew or suspected that the narcotics did not in fact belong to Plaintiff. Nor is there any other allegation or evidence, besides the misdated Investigation Action Report, that Plaintiff's arrest was tainted by tampering or other misconduct on the part of P.O. Coniglio and P.O. Dempsey. Their reliance on

Dep. Pozzuolo's information was therefore reasonable. "Because police work requires officers to rely upon the truth of information provided by their colleagues, when an officer is acting based upon the knowledge of a fellow officer, the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably." *Watkins v. Ruscitto*, No. 14 CIV. 7504, 2016 WL 3748498, at *7 (S.D.N.Y. July 11, 2016) (internal quotation and citation omitted).

Even if, as Plaintiff posits, the charging instrument was completed prior to the results of the field test on the suspected narcotics, it would not undermine probable cause for purposes of the false arrest analysis here. *See, e.g., Coleman v. Hauck*, No. 09-CV-1391, 2012 WL 4480684, at *8 (N.D.N.Y. Sept. 26, 2012) ("whether or not the baggie found on Plaintiff's floor and the object he dropped to the ground later testified negative for cocaine in a laboratory, and/or were found to be of insufficient qualities to warrant prosecution, is of no consequence to Plaintiff's claims of false arrest: any such facts would do nothing to negate the fact that the observations of Defendant[s] . . . when combined with the other undisputed facts described above, gave them probable cause to arrest Plaintiff for criminal possession of a controlled substance in the 7th degree . . . ."); *Brown v. City of N.Y.*, No. 11 CIV. 6379, 2013 WL 4713561, at *5 (S.D.N.Y. Aug. 27, 2013) (plaintiff failed to raise a triable issue as to false arrest where arresting officers and plaintiff himself believed that substance recovered in a search was marijuana, where subsequent test was negative for the drug and plaintiff ultimately was not prosecuted). Similarly, because the field test ultimately revealed that the substance tested positive for cocaine, Plaintiff cannot argue that "the authorities became aware of

exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest," for purposes of his malicious prosecution claim. *Johnson v. City of Mount Vernon*, No. 10–CV–70006, 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012).

Under these circumstances, there was probable cause to arrest Plaintiff for knowingly and unlawfully possessing a narcotic drug with intent to sell it, *see* N.Y. Penal L. § 220.16; and knowingly introducing contraband into a detention facility, *see* N.Y. Penal L. § 205.20. It is therefore recommended that the City Defendants are entitled to judgment as a matter of law on the false arrest and malicious prosecution claims against the defendant police officers.

### 3.    Qualified Immunity

Assuming the defendant officers did not possess actual probable cause, which the Court does not find, the City Defendants nonetheless satisfy the less-stringent standard for purposes of qualified immunity analysis as described above.

Here, the drug possession and contraband charges were added as a result of the suspected narcotics recovered during Plaintiff's pat-search during the booking process. P.O. Coniglio and P.O. Dempsey relied on the Supporting Deposition of Dep. Pozzuolo regarding the circumstances of the search and recovery of the alleged narcotics. Even if Dep. Pozzuolo did not have probable cause in this instance, the officers would still shielded from liability if they reasonably relied on the appearance of its existence. *See Askins v. City of N.Y.*, No. 10 CIV 2230, 2012 WL 12884363, at *6 (S.D.N.Y. Feb. 14, 2012), *aff'd in part*, *vacated in part*, *remanded sub nom. Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013) ("For qualified immunity, it may be that no officer actually has

probable cause; nevertheless, an arresting officer is shielded from liability if he reasonably relied on the appearance of its existence.") Thus, in applying the arguable probable cause standard, the City Defendants should be entitled to summary judgment on the undisputed facts, because it was objectively reasonable for them to rely on Dep. Pozzuolo's information.

Thus, the City Defendants are entitled to qualified immunity as to the false arrest and malicious prosecution bases § 1983 liability, and the Court recommends summary judgment be granted on this ground. *See, e.g., Phelps v. City of N.Y.*, No. 04 CIV. 8570, 2006 WL 1749528, at *3 (S.D.N.Y. June 27, 2006) (granting summary judgment for arresting officer in false arrest case, while denying summary judgment for officers that assured arresting officer that probable cause existed).

### 4.    Municipal Liability

As with his claim against the County Defendants, Plaintiff also contends that the Rochester Police Chief "fails to train its employees concerning proper procedures for prostitution details as to display conscious indifference to the constitutional rights of those within its jurisdiction." (Dkt. No. 232, ¶ 24).

As relevant here, a municipal policy or custom may be established by a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton*, 489 U.S. at 388. To establish the requisite deliberate indifference, Plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious. *See Canton*, 489 U.S. at 390. "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if

the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986)). "There is no bright line rule for how many complaints of civil rights violations is sufficient to show the need for more supervision, nor is there a bright line rule for how recent those complaints must be." *Tieman v. City of Newburgh*, 2015 WL 1379652, at *20 (S.D.N.Y. Mar. 26, 2015).

The only evidence Plaintiff offers to this end is the deposition testimony of P.O. Dempsey, P.O. Lusk, and P.O. Coniglio indicating that all three had previously been the subject of unrelated complaints, most of which were determined to be unfounded. (Dkt. No. 223-19 [Coniglio EBT] at 63; Dempsey EBT at 50; Dkt. No. 232-14 [Lusk EBT] at 46). P.O. Coniglio was also issued a letter of reprimand arising out of an incident with a patrol car, and none of the complaints were related to the Police Department's prostitution "sting" detail. *Id.* This evidence does not give rise to a material issue of fact necessary to defeat the City Defendants' motion for summary judgment. *See Sealey v. Fishkin*, No. 96 CV 6303, 1998 WL 1021470, at *3 (E.D.N.Y. Dec. 2, 1998) (unsubstantiated civilian complaints against police officer "would not suffice to prove deliberate indifference by the city to the need for any further training of this officer in particular or police officers in general."); *Marcel v. City of N.Y.*, No. 88 CIV 7017, 1990 WL 47689, at *8-9 (S.D.N.Y. Apr. 11, 1990) (finding, on summary judgment motion, that unsubstantiated complaints "do not demonstrate a breach of a municipality's duty to train or supervise its police."); *Law v. Cullen*, 613 F.Supp. 259, 262-63 (S.D.N.Y.1985) (granting summary judgment in favor of defendant-police officer where four

unsubstantiated complaints and one substantiated, but unrelated complaint in a nine year period was insufficient to establish deliberate indifference). Plaintiff has therefore failed to raise a triable issue of fact as to the City Defendants' liability under *Monell*.

For all of these reasons, the Court recommends that the City Defendants' motion for summary judgment be granted, and Plaintiff's cross-motion for the same relief be denied.[11]

IV.   **Conclusion**

For all of the foregoing reasons, it is recommended that Plaintiff's motion to extend time **(Dkt. No. 233)** be **GRANTED**; the County Defendants' motion for summary judgment **(Dkt. No. 223)** be **GRANTED**; and the City Defendants' motion for summary judgment **(Dkt. No. 226)** be **GRANTED**.

Further, it is recommended that Plaintiff's cross-motions for summary judgment **(Dkt. Nos. 227, 228)** be **DENIED**.

The Third Amended Complaint **(Dkt. No. 66)** should be **DISMISSED** in its entirety against all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

---

[11] Because the Court recommends granting summary judgment and dismissing all claims against the City Defendants in the Third Amended Complaint, it need not consider the City's remaining argument regarding the Rochester Police Department as a non-suable entity.

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988.

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to Plaintiff and Defendants.

**IT IS SO ORDERED.**

MICHAEL J. ROEMER
United States Magistrate Judge

Dated: February 14, 2017
Buffalo, New York